**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-2676
_____

RONALD E. ALONZO,
                                        Appellant

v.

JOE TERRA; CHARLES HENSELY; LT. DIGUARDI;
CORRECTIONS COUNSELOR JORDAN; CORRECTIONS
OFFICER WAGNER; STATE HEARING EXAMINER YODIS;
JAIME SORBER; PHOENIX SCI

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:23-cv-02532)
District Judge: Honorable Chad F. Kenney

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 3, 2026
Before: BIBAS, CHUNG, and BOVE, *Circuit Judges*

(Opinion filed: August 5, 2026)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Pro se Appellant Ronald Alonzo appeals the District Court's entry of summary judgment in favor of Defendants/Appellees. We will affirm the District Court's judgment.

I.

This case arises from an incident involving Alonzo, an inmate then incarcerated at SCI Phoenix, and a corrections officer. The corrections officer claimed that she saw Alonzo performing a sexual act while he was cleaning the prison staff bathroom. She filed a misconduct report in connection with the incident, alleging sexual harassment and indecent exposure. She also submitted a request for separation from Alonzo. After a disciplinary hearing, a hearing examiner found Alonzo guilty of indecent exposure but dismissed the sexual harassment charge. Alonzo lost his job and was sanctioned to thirty days in disciplinary custody. Alonzo's appeals were unsuccessful.

The same day that the corrections officer filed the misconduct report, Alonzo wrote to the Prison Rape Elimination Act ("PREA") coordinator, explaining his version of events. According to Alonzo, the corrections officer ordered him to commit the sexual act. A PREA investigation ensued, but a special investigator ultimately determined that Alonzo's sexual harassment allegations were unsubstantiated.

Meanwhile, when Alonzo's disciplinary custody sanction expired, the Program Review Committee placed Alonzo in administrative custody due to the possible separation from SCI Phoenix. Then, the Bureau of Personnel Management approved the

2

corrections officer's separation request, and Alonzo remained in administrative custody for around three months until his transfer to SCI Chester.

Around the time of his transfer, Alonzo received an H-Code designation, which is assigned when an inmate is identified as high risk. According to Alonzo, the H-Code designation limited his job opportunities, restricted him from participating in certain programs, and required him to move cells every 90 days.

Alonzo filed a pro se civil-rights complaint under 42 U.S.C. § 1983 against prison officials for violations of his First, Eighth, and Fourteenth Amendment rights in connection with his administrative custody placement, transfer, and H-Code designation. The thrust of each of his § 1983 claims was that the prison defendants retaliated against him for filing the PREA complaint. Alonzo also brought a state-law claim against the corrections officer for sexual assault.

Later, the parties moved for summary judgment. The District Court denied Alonzo's summary judgment motion and granted the defendants' motion. When granting the defendants' summary judgment motion, the District Court explained that Alonzo did not exhaust his administrative remedies, and the District Court declined to exercise supplemental jurisdiction over Alonzo's state-law sexual assault claim. Alonzo appealed.

## II.

The scope of this appeal is limited to the District Court's entry of summary judgment in favor of Superintendent Joe Terra, Lieutenant DiGuardi, and Corrections

Counselor Jordan as to Alonzo's § 1983 claims.[1] We review the District Court's judgment de novo, and "[w]e may affirm the District Court on any grounds supported by the record." *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

Alonzo argues on appeal that the District Court erred by granting the defendants' summary judgment motion on exhaustion grounds. But even assuming, as Alonzo argues, that there were material factual disputes regarding the availability of Alonzo's administrative remedies, summary judgment was still proper for other reasons. *See Nicini*, 212 F.3d at 805. Particularly, as the defendants argued on summary judgment, no reasonable factfinder could have found that the defendants violated Alonzo's constitutional rights.[2]

---

[1] The District Court had previously dismissed other prison defendants from the suit because of, inter alia, their immunity or lack of personal involvement, but Alonzo does not challenge those rulings on appeal. *See In re Wettach*, 811 F.3d 99, 115 (3d Cir. 2016) (explaining that any issue that an appellant fails to develop in an opening brief is forfeited). Nor does Alonzo challenge the District Court's without-prejudice dismissal of the state-law sexual assault claim.

[2] Defendants/Appellees maintain on appeal, as they did before the District Court, that Alonzo's claims on the merits could not survive summary judgment.

Alonzo could not prevail as a matter of law on his claim that the defendants retaliated against him for filing the PREA complaint. A retaliation claim requires a showing that: (1) the inmate engaged in constitutionally protected activity; (2) the inmate suffered "adverse action at the hands of prison officials"; and (3) "his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001)). But even if an inmate makes this showing, "the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.

Here, the defendants met their burden by pointing to uncontested facts revealing that Alonzo's placement in administrative custody, transfer, and H-code designation were all decisions made in furtherance of maintaining the prison's safety and security. *Cf. Fraise v. Terhune*, 283 F.3d 506, 516 (3d Cir. 2002) (recognizing "a legitimate penological interest in maintaining order and security within the prison system"); *Jones v. Brown*, 461 F.3d 353, 364 (3d Cir. 2006) (recognizing that "the health and safety of inmates and staff are legitimate penological interests"). In the corrections officer's request for separation from Alonzo, she explained her safety concerns, including that she feared potential retaliation from her reporting of his indecent exposure. She also feared that Alonzo would sexually assault her, and she detailed other examples of Alonzo's behavior that concerned her, including that he would lurk around her, stand very close to her, and wait until she was alone before requesting her assistance. While the separation

5

request was pending, Alonzo was placed in administrative custody pursuant to the prison's "standard practice" of placing an inmate subject to a separation request in administrative custody "to promote the safety and security of the parties involved during the deliberation process."

Further, the summary judgment record established that the prison officials approved the separation request because of Alonzo's sexual misconduct and an internal security report finding that a failure to separate Alonzo and the corrections officer could "cause a disruption to the safe and secure operation of the facility." Alonzo remained in administrative custody until his transfer pursuant to the prison's "standard practice" after an approved separation request, which was in effect "to promote the safety of the staff member and the inmate, as well as the security of the correctional facility." And finally, the record established that a Program Review Committee unanimously voted to assign Alonzo an H-code because he "demonstrate[d] sexually inappropriate behaviors toward[] staff."

Alonzo attempted to rebut the defendants' evidence by asserting that he had heard through "the jailhouse grapevine" that there were two other inmates who were adjudicated guilty of indecent exposure and not placed in administrative custody, transferred, or assigned an H-code. But he produced no competent evidence to support this. *Cf. Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) (noting that "speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment"); Fed. R. Civ. P. 56(c)(4) (explaining that a sworn statement used to oppose a summary judgment motion "must be made on personal

6

knowledge"). Even if he had, the fact that other inmates were adjudicated guilty of indecent exposure and not subject to the same treatment as Alonzo still did not sufficiently rebut the defendants' evidence that they acted in furtherance of prison safety and security in Alonzo's case. In addition to the evidence that Alonzo was adjudicated guilty of indecent exposure, the summary judgment record also contained undisputed evidence that a corrections officer reported fearing for her safety based on the exposure incident and other instances of Alonzo's inappropriate behavior toward her. We will accordingly affirm the District Court's grant of summary judgment on Alonzo's First Amendment retaliation claim.

For the reasons just explained, Alonzo also could not survive summary judgment on his claim that the defendants violated the Equal Protection Clause by treating him differently than other inmates. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (explaining that, to state an equal protection claim under a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment"). Alonzo also failed to point to any evidence from which a reasonable factfinder could determine that the defendants deprived him of due process. *See Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (15-month confinement in administrative custody did not deprive prisoner of liberty interest); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 225 (3d Cir. 2015) (no protected "liberty interest in being housed in a particular institution or at a particular custody level"); *Bryan v. Werner*, 516 F.2d 233, 240 (3d Cir. 1975) (no constitutionally protected interest in "keeping a

particular prison job"); *Sheehan v. Beyer*, 51 F.3d 1170, 1174 (3d Cir. 1995) (no

protected right to be placed in cell of choice); *see also Newman v. Beard*, 617 F.3d 775,

782 (3d Cir. 2010) (citations omitted) (explaining that conduct violating substantive due

process encompasses "only the most egregious official conduct" and "shocks the

conscience"). And the summary judgment record is devoid of any evidence that the

defendants denied Alonzo "the minimal civilized measure of life's necessities" in

violation of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)

(citation omitted).

IV.

Accordingly, we will affirm the District Court's judgment.

8